UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY THOMAS MURRAY,<br><br>Plaintiff,<br><br>v.<br><br>MARSHA MCKAY, et al.,<br><br>Defendants. | **CASE NO. 1:17-cv-00564-MJS (PC)**<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**THIRTY-DAY DEADLINE TO AMEND** |

Plaintiff proceeds pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff's April 17, 2017 complaint is before the Court for screening. (ECF No. 1.)[1] Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 10.) No other parties have appeared in the action.

**I.  Screening Requirement**

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity.  28

---

[1] Plaintiff originally filed this action in the Sacramento Division of the Eastern District of California. However, as the alleged violations occurred in Tuolumne County, his case was properly transferred to the Fresno Division. (ECF No. 5.)

U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III. Plaintiff's Allegations

Plaintiff is currently incarcerated at the Deuel Vocational Institution in Tracy,

California, however his claims stem from his incarceration in the Tuolumne County Jail in Sonora, California. Plaintiff does not specify whether he was pre- or post-conviction at the time of the alleged violations. If Plaintiff files an amended complaint he must clarify whether he was serving a sentence at the relevant time.

He brings this action against Dr. Marsha McKay, Commander Tamara McCaig, Nurse Joan Lenerd, and the Tuolumne County Sheriff's Department. He alleges the denial of adequate medical care, medical malpractice, denial of the free exercise of religion, and invasion of privacy. His allegations may be summarized essentially as follows:

### A. Medical Care Claims

On or around March $2^2$, Plaintiff was taken into custody at the Tuolumne County Jail ("the Jail"). At the time, Plaintiff had a prescription for a non-narcotic medication to treat his broken foot/ankle. Jail medical staff discontinued Plaintiff's medication, denied Plaintiff a place in the "medical tank," and forced Plaintiff to use a shower that was not ADA compliant, thereby invading Plaintiff's privacy and causing him pain. Plaintiff was placed in a cast and forced to use the shower without first being provided medical tape to seal the opening between the cast and his leg. As a result, water seeped into the cast and it rotted for several days before medical staff removed it.

Plaintiff reports that his foot is still broken and he is now in a walking cast. Plaintiff states he needs physical therapy, pain medications, an ADA-approved shower, and a medical bed. He receives the same pain medications as his cellmate, who only has a toothache. Plaintiff believes that Jail has done everything possible to avoid treating Plaintiff's medical condition in the hopes of "pushing it off" onto the prison. They also will not give Plaintiff his X-rays

### B. Religious Exercise Claims

While in custody, Plaintiff was not allowed to attend any church services due to his status as a high-security inmate with medical issues. Plaintiff's requests were met with

---

[2] Plaintiff does not state the year.

smiles, jokes, and reference to a policy that Plaintiff could never get in writing. The Jail Commander, Tamara McCaig, refused to talk to Plaintiff about the issue. Plaintiff was also unable to file grievances about the issue, since "7 out of 10" would be thrown away and the officers would refuse to give Plaintiff complaint forms.

### C. Invasion of Privacy Claim

Plaintiff complains that the "B" module web visiting camera faces the men's shower, and there is nothing to block visiting family members' view of naked men showering since the images are broadcast "over the web" and into the visiting room. Furthermore, Plaintiff himself has been recorded while he was naked in the shower, and he believes individuals in the visiting room have been able to see his naked body on the television screen. Plaintiff believes that the location of the offending camera invades inmates' privacy, since "that camera didn't have to go there."

Plaintiff also complains that guards stand in on inmates' medical appointments and make comments about the prescribed treatment.

## IV. Discussion

### A. Municipal Entity Liability

Plaintiff purports to sue the Tuolumne County Sheriff's Department, although he links no actions or omissions to the Sheriff's Department. He thus appears to make a Monell claim.

"[S]ection 1983 imposes liability only on 'persons' who, under color of law, deprive others of their constitutional rights, [and] the Supreme Court has construed the term 'persons' to include municipalities such as the County." Castro v. Cty. of Los Angeles, 797 F.3d 654, 670 (9th Cir. 2015) (citing Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978)). Counties and their entities may not be held liable for the actions of their employees under a theory of *respondeat superior*, but they may be held liable for a constitutional violation if an action taken pursuant to a policy, be it a formal or informal policy, caused the violation. Castro, 797 F.3d at 670 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 131 (1989) and Monell, 436 U.S. at 691) (quotation marks omitted); see

also Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (municipal liability claim cannot be maintained unless there is an underlying constitutional violation).

Municipal liability may also be imposed where the local government unit's omission led to the constitutional violation by its employee. Gibson v. Cty. Of Washoe, Nev., 290 F.3d 1175, 1186 (9th Cir. 2002). Under this route to municipal liability, the "plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." Id. This kind of deliberate indifference is found when the need to remedy the omission is so obvious, and the failure to act so likely to result in the violation of rights, that the municipality reasonably can be said to have been deliberately indifferent when it failed to act. Id. at 1195.

In this case, Plaintiff has not linked the underlying violations of his rights by the Tuolumne County Sheriff's Department to a policy or practice attributable to the county, or provided any facts showing that the county knew of, and blatantly ignored, constitutional violations committed by its entity. Therefore, all claims against the Sheriff's Department will be dismissed with leave to amend. Should Plaintiff amend, he should clarify 1) what conduct constituted a violation of Plaintiff's rights, and 2) how that conduct was pursuant to government policy or practice.

**B.  Linkage**

Plaintiff sues three individual Defendants and one entity. The only Defendant he links to any particular action or omission, however, is Jail Commander Tamara McCaig. Even with regards to her, Plaintiff alleges that she "refused" to discuss his religious exercise issue with him and directed Legacy Communication to install cameras facing the showers. These actions do not amount to constitutional violations.

Under § 1983, Plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Ashcroft, 556 U.S. at 676-7; Simmons, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not

attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013).

Here, Plaintiff fails to link Dr. McKay, Nurse Lenerd, or the Sheriff's Department to any particular act or omission that led to the violation of Plaintiff's rights. Indeed, Plaintiffs' allegations with regard to Commander McCaig are too vague for the Court to attribute any liability to her. Plaintiff's claims against all Defendants will therefore be dismissed with leave to amend.

### C. Conditions of Confinement

Plaintiff claims Defendants violated the Eighth Amendment when they failed to properly treat his pain. As Plaintiff's custodial status at the time of the alleged violations is unclear, the Court will advise Plaintiff of the pleading standards under both the Eighth Amendment, which prohibits cruel and unusual punishment of prisoners, and the Fourteenth Amendment due process clause, which protects pretrial detainees. Plaintiff's claims fail under both the Eighth and Fourteenth Amendments, however he will be given leave to amend. Plaintiff should clarify whether he was pre- or post-conviction during his time at the Jail in his amended complaint.

#### 1. Eighth Amendment

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson, 503 U.S. at 9 (citations and quotations omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk

6

of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). "Deliberate indifference describes a state of mind more blameworthy than negligence" but is satisfied by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Here, Plaintiff lists a number of medical accommodations he believes he was entitled to, including medications, physical therapy, a medical bed, and an ADA complaint shower. In order to state a claim under the Eighth Amendment, Plaintiff must demonstrate: 1) that he has a serious medical need which, left untreated, would result in further significant harm or injury, and 2) that each Defendant's response to the pain was deliberately indifferent. He will be given leave to amend.

### 2. Fourteenth Amendment

Conditions of confinement claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003). The standard applicable to a pretrial detainee's claim for conditions of confinement and inadequate medical care under the Fourteenth Amendment is presently not clear. In the past, such claims were subject to the same state of mind requirement as an Eighth Amendment violation, i.e., subjective and deliberate indifference to a substantial risk of serious harm. See Clouthier v. Cty. of Contra Costa, 591 F.3d 1232 (9th Cir. 2010). However, that holding was called into question by the United States Supreme Court in a

Fourteenth Amendment excessive force case, <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2473 (2015). Most recently, the Ninth Circuit extended the <u>Kingsley</u> rationale to a Fourteenth Amendment failure-to-protect claim. <u>Castro v. Cty. of Los Angeles</u>, No. 12-56829, 2016 WL 4268955, at *7 (9th Cir. Aug. 15, 2016) (en banc) (slip op). Although <u>Castro</u> did not expressly extend its holding to other Fourteenth Amendment violations, the Court sees no reason why the same rationale should not apply to other Fourteenth Amendment conditions of confinement and medical care claims.

Accordingly, in order to proceed on such claims, Plaintiff must allege "(1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." <u>Id.</u> With respect to the third element, the defendant's conduct must be "objectively unreasonable." <u>Id.</u> (citing <u>Kingsley</u>, 135 S. Ct. at 2473).

Analyzing Plaintiff's conditions of confinement claims under this rubric, there is no evidence that any Defendant made an intentional and objectively unreasonable decision with regards to Plaintiff's medical treatment that placed Plaintiff at risk of suffering a foreseeable harm. Plaintiff will be given leave to amend.

### D. Religious Exercise

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." <u>Hartmann v. California Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1997)). The protections of the Free Exercise

Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In determining whether a prison regulation is reasonably related to a legitimate penological interest, the Court must balance four factors. Turner, 482 U.S. at 89. First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

Here, Plaintiff has not alleged that any Defendant's actions substantially burdened a sincerely held belief. In any event, it appears the prison had a valid policy reason for disallowing Plaintiff to attend church. Plaintiff's religious exercise claim will be dismissed with leave to amend.

### E. Invasion of Privacy

The Constitution does not expressly guarantee a "right to privacy," however "the Supreme Court has recognized that 'zones of privacy' may be created by specific constitutional guarantees." Grummett v. Rushen, 779 F.2d 491, 493 (9th Cir. 1985). Plaintiff's complaint that the filming and broadcasting on inmates showering constitutes an invasion of privacy may best be evaluated under the individual liberty component of the Fourteenth Amendment. See generally Whalen v. Roe, 429 U.S. 589, 598-600 (1977) (recognizing an individual interest in avoiding the disclosure of personal matters). The rights found in the guarantee of personal privacy are limited to those which are

"fundamental" or "implicit in the concept of ordered liberty." Roe v. Wade, 410 U.S. 113, 152 (1973). Any infringement of those rights must be justified by a "compelling state interest." Grummet, 779 F.2d 494. Furthermore, the imposition must be more than *de minimis*. See Bell v. Wolfish, 441 U.S. 520, 539 n. 21 (1979) (noting that a *de minimis* level of imposition does not rise to a constitutional violation).

The Supreme Court has not expressly recognized a privacy interest in shielding one's naked body from public view. See Grummet, 779 F.2d at 494. This Circuit has found that the Due Process Clause would prohibit the photographing of a complaining witness in the nude for no law enforcement purpose, York v. Story, 324 F.2d 450, 456 (9th Cir. 1963), or a male parole officer's direct observation of a female parolee urinating for a drug test, Sepulveda v. Ramirez, 967 F.2d 1413, 1416 (9th Cir. 1992). However, the Ninth Circuit has rejected a prisoner's right to privacy claim with regard to unclothed searches conducted in the presence of female guards where the intrusion was limited and served a legitimate state interest in maintaining institutional security. Grummet, 779 F.2d at 494-95.

There can be no dispute that the installation of video cameras throughout the jail, including in the showers, is necessary to preserve institutional security. Here, Plaintiff alleges that images of inmates showering are "broadcast" over the web to the visiting room. Plaintiff will be given leave to amend to plead more facts describing how and why the placement of the video cameras and the manner in which the images are transmitted and viewed, including *how* those images are visible to visiting families, and why those transmissions constitute an invasion of Plaintiff's privacy.

Plaintiff fails to allege any constitutional violation in allowing guards to remain in a medical examination room during medical visits to promote institutional security. That claim will also be dismissed with leave to amend.

**F.     State Law Claims**

Plaintiff alleges medical malpractice, which falls under the state law tort of negligence. This Court may exercise jurisdiction over a state law claim pursuant to 28

U.S.C. § 1367(a), which states in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," except as provided in subsections (b) and (c). "[Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." <u>ACI v. Varian Assoc., Inc.</u>, 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966). California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board ("the Board"), formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. <u>State v. Super. Ct. of Kings Cty. (Bodde)</u>, 90 P.3d 116, 124 (2004); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. <u>State v. Super. Ct.</u>, 90 P.3d at 124; <u>Mangold</u>, 67 F.3d at 1477; <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 627 (9th Cir. 1988). An action must be commenced within six months after the claim is acted upon or is deemed to be rejected. Cal. Govt. Code § 945.6; <u>Moore v. Twomey</u>, 16 Cal. Rptr. 3d 163 (Cal. Ct. App. 2004).

In a medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." <u>Tortorella v. Castro</u>, 140 Cal. App. 4th 1, 3 n.2 (2006); <u>Hanson v. Grode</u>, 76 Cal. App. 4th 601, 606 (1999). "The

standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal. 4th 101, 108 (Cal. 1999); Landeros v. Flood, 17 Cal. 3d. 399, 408 (1976).

Plaintiff has not alleged compliance with the Tort Claims act, nor has he established the elements of a medical malpractice claim. He will be granted leave to amend.

**V.     Conclusion**

Plaintiff's complaint fails to state a cognizable claim. The Court will provide Plaintiff the opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). If Plaintiff chooses not to amend, and instead wishes to voluntary dismiss his case without prejudice, he must so notify the Court.

The Court advises Plaintiff an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint (ECF No. 1) is DISMISSED with leave to amend;
2. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint filed April 17, 2017;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and

4. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, this action may be dismissed, with prejudice, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated: August 18, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE